Okay. Now, Mr. Murray, you want five minutes for rebuttal, right? Yes, I do, Your Honor. Thank you. If you could save it, then we'll give it to you, or we'll give you something anyway. Thank you, Your Honor. So before I address the issues on this related appeal, I'd like to point out that if this Court affirms the Board's decision in the CBM appeals that we just discussed on the Section 101 issues, then these appeals are mooted in their entirety. You're trying to make life easy for us, but that's okay. I'm not trying to make it more difficult. You don't mind addressing two separate cases. You're hedging risk, aren't you? I'm certainly not counting any chickens, Your Honor, so I'm prepared to talk about this case. So I'd like to talk about the legal error that the Board committed in changing their claim construction. So in the proceedings below, the Board adopted a claim construction for a risk level, an aggregate risk level, that was, quote, a calculated, measured, or otherwise obtained value of exposure to the possibility of loss related to said trade. This is page A07 in the appendix. But in its final decision, it's clear when you look at how the Board applied that claim construction that they narrowed it substantially. And if you look at page, for example, A14 and A34 in the appendix, the Board said, quote, So the Board added another requirement to risk level. It doesn't just have to be an indication of risk. It has to take into account critical information such as volume, price, et cetera. And we saw that application that changed construction really for the first time when we saw the final written decision at the end of the case. So we never had an opportunity to address it below. Our experts didn't address it. We didn't argue about it at the hearing. Did you ask for a construction of the words determining a risk level? We were satisfied with the construction that the Board initially adopted, which didn't have these requirements about critical information. So we had no reason to do that. So we think it was error to narrow that construction at the end of the case. And if that construction had been proposed early on in the case, we would have objected to it. How do you determine a risk level without basic information? Well, you have to have some information, but you don't have to have the critical information that's required here. You don't have to have price and volume? No, you don't, Your Honor. And I don't think that you do. Now, TILFERS actually uses volume to determine step-ups, which is the sort of second part of my argument this morning, is that even under the narrow construction, there isn't substantial evidence to support the conclusion by the Board that TILFERS doesn't do exactly that. So we have relied upon something in TILFERS that's described as step-up. And step-up is a mechanism that ISC created to help market makers keep their quotes active in an exchange. So, for example, an exchange would typically have a rule that a quote has to have a certain volume in the quote, let's say 50 contracts in a quote for it to be valid. So if a market maker puts in a quote for 50 contracts and it matches against an order for 20 contracts, that quote is still in the system, but it only has 30 contracts in it, so it's not a valid quote. And the market maker misses out on the opportunity to maybe do that trade. So ISC came up with this idea of step-up, and step-up adds volume back into that quote. Now, that's a good thing, and it helps the market makers, but ISC also recognized that it poses a potential risk, because a trader could try and kind of game the system a little bit by putting in a large number of small orders, and when you have that automatic step-up, that we keep refilling that quote at the same price, a trader could perhaps get hundreds of contracts at the price of the original quote because the step-up would happen automatically. Right, so that's your theory, that what we're doing is that we're assessing some risk, which is a risk that somebody might be gaming the system, right? Yes. And you define that as a risk, and so you say that that's a risk that you can determine even without price? Well, the specific risk is that volume has been added to the quote. I mean, when you add volume, this is why my argument is that Tilfers absolutely takes volume into account, because a step-up only happens when the volume of the quote drops below the threshold required by the exchange, 50 in my example. So when the volume in the quote drops below 50, you step it up. So you're adding, in my example, you're adding 20 contracts to that quote. So step-up is caused by volume. Now, it's not an exact measure of how much volume is added, because the fact that a step-up happened doesn't tell you whether you added 20 contracts or you added 30 or you added 5, so it's not precise, but it tells market makers somebody is putting orders in there that are causing step-ups. Is that the kind of risk assessment that is normally talked about when you're talking about a system like this? I mean, isn't the risk supposed to be having to do with price and volume calculations? Well, there are many risks that face market makers, and the claim is fairly broad. It just says that you have to have, as your Honor talked about before, it's a very broad claim. It just says that you have to have a risk level, you have to have associated with a trade, you have to have an aggregate risk level, and when you cross a threshold, you have to modify the remaining quote. It's a very broad claim, so it reads exactly on what happens, what TILFERS does with step-up. I didn't kind of finish the story, but in order to protect market makers from a lot of volume being added to a quote using the step-up mechanism, the TILFERS patent says you can set a threshold, and the threshold could be three step-ups, and after three step-ups, you tick the price worse, and that's the other thing that we talk about in our briefs is called tick worse. And tick worse means worse from the counterparty, so it's actually better, you're ticking better for the market maker. So what TILFERS does is it counts step-ups. Each step-up is a value, it's either a step-up happened or it didn't happen, it's a one or it's a zero. That value is counted. When you have a one, you count up those step-ups. When you get to the threshold, which could be three or four, for example, then you change the price of the quote. So that's precisely what claim one talks about. So what you're saying is if we have to accept at face value that modification can relate to any potential risk, that therefore this TILFERS is modifying to address a potential risk. Is that what you're saying? Absolutely. The risk in here is that you're, well, the risk of the claim is that aggregate risk gets larger than the market maker wants, that it's going to cross some threshold. So the aggregate risk here is I have three step-ups. Now as a market maker, if I know that I have three step-ups, I know volume has been added three separate times to that quote. So maybe I'm not comfortable with that, or maybe I'm comfortable going up to five. I can set that. Is there anything in the spec of the patent that indicates that the type of risk that's being assessed is the type of risk you're saying? Because what you're saying is not the risk of loss. You're saying it's a risk of not gaining as much. No, Your Honor. Respectfully, I think it is a risk of loss. The problem is that if market makers sell too many contracts on one side, let's say long contracts, a long option contract means that the person buying the contract thinks the stock price is going to rise. So we call that going long. So let's say something happens in the market. A review comes out for Apple's new iPhone, and it's a great review. Everybody thinks Apple, the traders think Apple's stock is going to go up. So they start hitting options contracts, long options contracts, and they want to buy a lot of them because they're convinced the price is going to go up. That poses a big risk to market, really the same kind of risk that the 498 patent is talking about. It's a risk to market makers that will sell too many options contracts on the long side, and then if the price goes up, the market maker could be in a lot of trouble because the market maker would have to go out and buy the stock at the higher price to satisfy the options contracts when the holders of the contracts do a call. I don't see anywhere in claim one where a risk is specified or defined. This talks generally about risk, and you're pointing to specific risk that I don't see in the claim. I think Your Honor is right that the claim is very broad. It doesn't specify any particular type of risk. It just says that there has to be a risk level associated with a trade. Now when you have a trade, as I'm discussing here, a trade that is 20 contracts in a quote for 50, that trade will cause a step up. So there is a risk associated with that trade to the market maker. Every time a trade causes a step up, that poses risk to the market maker because more volume is being added to that quote. Adding more volume means there are more contracts out there that traders on the other side can buy. So that's a direct risk to the market maker. My problem is that even if you go back to the board's claim construction, the one that you said you liked, it does say it calculated, measured, or otherwise obtained value of exposure. How is the number of step ups a value to exposure? Well, it certainly is a value, right? Because if I have three step ups, three is a value. So that's the aggregate risk level. The fact of a step up is itself a value. Either I have a step up or I don't. That's a zero or a one. That's a value. Now it's not a value that tells you the precise risk. It's a number, but is it really a value? I think it is a value, Your Honor. One is a value. One is a number. I think that's what value means. I don't think it has to mean a precise value. Wouldn't it normally mean a comparison or a calculation? It says calculated, measured, or otherwise obtained value. In order to get to a value, don't you have to have two different measures at least? Yes. Two plus two equals four. Yes, four is a number, but it's also a value in that sense. Well, there are two different things that can happen when a trade occurs against a quote. Either a step up is going to be triggered by that particular trade, or it won't. So you have two options there. We can call it a zero and a one. So if that trade does not trigger a step up, if it doesn't have just the right volume to trigger a step up, then the value is going to be zero, and it doesn't get counted up when you're adding up the aggregate value. If the volume is just right, that causes a step up, then the value is one, and you add that to your running total of step ups. So for that quote, maybe now we have five step ups for that quote, which means that there have been five orders that came in and hit that quote, not for the full volume, but for just the right volume to generate a step up. And now the risk to that market maker is starting to increase to perhaps an uncomfortable level because volume contracts keep getting added to that quote over and over and over again. And as those contracts get added, that market maker is exposed to more and more risk because if they're long contracts, in my example, and the price rises, the market maker could be in trouble. So this Tilfer's mechanism protects market makers from the risk of having too many contracts out there on sort of the wrong side of things. It's really the same exact thing. I want to give you some rebuttal, so I'll give you three minutes, and then we'll go. Thank you. Good morning again, Judge O'Malley, and may it please the Court. The question that Your Honor asked Mr. Murray parallels very well the reaction of ISE's expert to the same question when she was asked it in a deposition in this matter. This is in the appendix of page A798. The question, so the risk level is the fact that we are stepping up. Answer, that is kind of strange, right? She was puzzled by it because, in fact, the fact that one is stepping up cannot be a calculated, measured, or otherwise obtained value of exposure to the possibility of loss related to said trade. That is, it's got to be the possibility of loss related to the trade that just took place. You cited to that exchange a couple of times. What did she mean by strange? The question was strange, or the fact that that's the risk is strange, or I don't understand. Right. The questioner just didn't close the loop there. Right. The risk level, the question of whether or not there's a step up is a yes or no answer to whether or not you put in more quotes to meet the exchange traded minimum. It has no correlation to the risk of loss associated with the last trade. Let me give you a couple of examples. I think your Honor is probably familiar with this from your questions to Mr. Murray that the PTAB relied on. So let's assume that the exchange has a required minimum of 10 contracts, that you have 10 contracts out there. In one circumstance, you have the 10 contracts out there, and there's a transaction for five of them. You want to replace and get back to the 10. So the step up is one. Five contracts have been sold. The step up is one. In another circumstance, you have 20 contracts out there, and you sell nine of them.  The step up there is actually zero, because 20 minus nine, you're at 11. You're already higher than the required number of contracts. So you're trading more contracts, but instead of getting a step up, you get no step up. A third example, let's assume that there were 10 contracts out there, and you sell one of them. Then you have a step up of one. So again, you have a step up of one that correlates to one contract being sold. In my first example, you have a step up of one, which correlates with five contracts being sold. How can there be a correlation to risk of loss from the trade that was just done if one and five get the same number, and nine could get the zero instead of the one? Now, what the PTAB did, first of all, the standard review and appeal, this is an anticipation ruling with respect to TILFers, substantial evidence. So Mr. Murray, I would suggest in order to try to avoid the problems with the standard of review, is trying to characterize the problem as the PTAB having changed its claim construction. And I would direct the court first to what the PTAB itself said. They said repeatedly that they did not change their claim construction. How could they not change the claim construction? I mean, the claim construction said measuring, calculating in any way, and then it said you have to have particular parameters. I mean, how is that not different? What it is, Your Honor, is the PTAB explaining its reasoning in concluding that TILFers did not meet the claim limitation. And I know this court wants PTAB judges to explain their reasoning. My mother always told me, you can't get in trouble if you keep your mouth shut. You probably don't want the PTAB keeping their mouth shut and giving conclusions. What they did here is they said, here is the agreed upon claim construction. I calculated, measured, or otherwise obtained value of exposure to the possibility of loss. And then they examined in detail whether the interpretation that ISC was putting on TILFers met that agreed upon construction. They said, is there a value of exposure to the possibility of loss? And they went through exactly the analysis that we've been talking about in great detail. And by the way, this issue was fleshed out in enormous detail at the trial. I mean, this is what all the questioning was about. Did that number one in TILFers correlate to a value of exposure to the possibility of loss? And there were questions of both sets of attorneys on, well, what does the one really mean? What if there are more contracts traded, less contracts traded, contracts traded under this circumstance, that circumstance? So the PTAB was drilling down doing exactly what you would want them to do to see if TILFers met that agreed upon claim construction. But is that saying, I mean, it's possible that TILFers calculate some risk of loss but doesn't do it very well. That doesn't mean that it wouldn't anticipate, right? Well, I think what the PTAB concluded, and I believe it was completely correct, is that TILFers didn't calculate a risk of loss. What it did is it asked the question, should there be a step up or not? It's a yes or no question. And it has no relationship to the volume. It has no relationship to the price. And Your Honor asked about, you know, where do you get volume and price from with respect to risk of loss? It's in the patent specification. Column 12 has a section entitled Risk Measurement and Risk Thresholds. And not surprisingly, you know, in talking about the different types of risks, this is down at lines 55, 56, 57, 58, it's talking about the number of contracts, the number of shares, the price, the change in price. I mean, that's what you have when you're talking about risk of loss. It's mostly volume and price. It can be other things, too. It can be, you know, how far up the contracts are. Maybe it can be the rate of change, you know, in the price. There are all sorts of variations. But what the PTAB did is it looked at three things. It looked at admissions made by ISE during the trial. This was Mr. Murray's admission that if you have, no matter how many contracts are traded, no matter how many contracts are traded, if there's a step up, the value is always one under his interpretation. Number two, they looked at CBOE's expert. If you wanted the board to conclude that determining a risk level, an aggregate risk level, necessarily included or required the consideration of particular parameters based on, you know, the overall view of the specification, why didn't you ask for that? I think the agreed upon claim construction was fairly clear. It's risk of loss associated with value of exposure to the possibility of loss related to said trade. And it wouldn't necessarily be limited just to volume and price. Volume and price were the two examples that the PTAB used. And if we look at, I believe it's page A14 in the record, the PTAB when talking about this says, such as, and then ends the statement with, et cetera. It's giving examples of how you can have a correlation between the risk of loss on the prior trade, how you can have that correlation. And the examples they gave were price and volume. What they then did in their decision was they analyzed based on the testimony of Dr. Steele, who was our expert and cited in the PTAB decision, based on the admissions made by Dr. O'Hara, ISE's expert, based on the admissions made by Mr. Murray, at least these three things they looked at, and they said there isn't a correlation between this number one and the possibility of the risk of loss associated with the prior trade. Now, Mr. Murray is only talking about the second element here, and that's the aggregate risk of loss. He says if you get one, one, one, you get five, then something must be going on. The system is being gamed. But there's a separate element, which is the risk of loss associated with the prior trade. That's where they fall down. They also fall down on the aggregate risk level. If you were to look at the joint appendix at A773, Dr. O'Hara has asked this question, where in TILFERS does it expressly describe the aggregate risk level? Answer, I'm not sure it does. So even on the aggregate risk level, which is what Mr. Murray spent 80% of his time talking about, their own experts said TILFERS does not expressly disclose that. Is step up any indication of risk? I don't think so. The reason I don't think, and more importantly, the PTAB didn't think so, and its conclusion was supported by substantial evidence. Experts on both sides and admissions. Here's the reason. I go back to these same examples again. If you have 20 contracts out there and you sell nine of them, you have 11 left. Under the assumption that 10 is the required minimum, you've sold nine contracts and your step up is zero. You don't have to step up because you're already higher than the required minimum. On the other hand, if you have 10 contracts out there and you sell one, you're going to have to step up, so your step up will be one. So you've got a risk level of one, a value of one for a transaction involving one contract, but a risk level or a value of zero selling nine contracts. It doesn't make any sense. It seems to be completely backwards. Shouldn't the risk if nine were traded be higher than the risk if one were traded? That's the sort of analysis that the PTAB went into in depth. It explained its reasoning over a course of four or five pages. It, again, cited the experts on both sides and the admissions that were made at the trial, and it reached this conclusion, which I would submit is supported by substantial evidence. The one is something. It's a number. I don't believe that it's a risk level associated with the trade, and I don't believe it's a calculated, measured, or otherwise obtained value of exposure. What if the number is eight? Well, first, Mr. Murray has not postulated any circumstance under which Tilford teaches that the risk level associated with a trade could be anything other than one or zero. Now, he talks about aggregate risk level, but that is a separate claim element. What he says Tilford teaches is that you look at it. It's a binary thing. You look to see if there's a step-up required. If a step-up is required, then the value is one. If a step-up is not required, the value is zero. It couldn't be eight. They've never argued that. He may say, if it happens eight times, that's the aggregate risk level. But, again, Maureen O'Hara, their expert, said that's not disclosed in Tilford's, and the PTAB was entitled to rely on that. So two separate and independent bases. No aggregate risk level, no risk level associated with a particular trade. Now, we also know, Your Honor, well, I think that addresses the points that I wanted to hit if the Court has no further questions. I'm having a hard time. I understand your argument, but I just don't see how, like, if you have the step-up process is used several times, step-up parameters, that that doesn't affect price. It just seems to me that there is a correlation between the value that you're talking about and ultimately with price. So, again, let me go back to the same example and explain why I think there's absolutely no correlation between the two of them and why the PTAB was perfectly justified in reaching that same conclusion. Let's go back to the same example. If you have 20 contracts out there and you sell nine of them, or you have 100 contracts out there and you sell 89 of them, you end up with 11 contracts. That's above the exchange minimum. So the step-up there is zero. You sell 89 contracts. You sell nine contracts. The risk is zero under ISC's articulation. On the other hand, if you had 10 contracts out there and you sell one, you've got to do a step-up. The risk level is one. There isn't a correlation. Now, maybe he can make up a theoretical case about how one could intuit on a Tuesday, if the weather is 68 degrees and the Giants had won the previous weekend, that one could correlate with this. But correlation means correlation. And the PTAB properly found that there was no such correlation, which is why Tilfers did not anticipate, did not meet this claim limitation. Okay. Thank you, Your Honors. Okay, thank you. First, Your Honor, now that we've been talking about the IPR for a while, I'd just like to sort of bring it back to the CBM. We have not been talking about open outcry, because open outcry was not considered by the board in terms of the IPR. So that's why the result in the IPR really is not at all inconsistent with the conclusions that the board drew in the CBM, that the basic method of this claim was used in open outcry. There's no inconsistency here, because we didn't ask the board in the IPR to reject the claims based on what happened in open outcry. You can't use 102A type prior art. So the board has not been at all inconsistent. Now, the step up is, I can see it is not precise. It is not a precise measure of risk. It certainly relates to the trade. The trade causes the step up. I've never really understood this argument. If there's a quote there for 50 contracts and a trade comes in for 20 contracts, that trade would cause a step up in that example. So the fact that a step up has happened is, of course, related to that trade. The trade causes the step up. All right, but what's your response to his argument that, while it may ultimately get to something that correlates to an aggregate risk level, it does not determine the risk level? The risk level of the claim just has to be an indication of risk related to the trade. So there are two possible values here, and I can see 8 isn't one of them, for a risk level, 0 and 1. Now, if the value is 0, that tells the market maker that there's been no step up associated with that trade. So no volume has been added to the contract. So let's say the original quote was for 100 contracts, the exchange minimum is 50, and the order was for 20. So it goes down to 80. So there wouldn't be a step up there, right, because it didn't fall below the minimum. So the risk level there would be 0. That tells the market maker, don't worry, we have not added any volume to the quote that you have out there. Now, if there's another trade against that quote that brings it down below 50, and now the system is adding volume to the market maker's quote, the risk level becomes 1, which is a different value. That tells something very meaningful to the market maker. It tells the market maker that volume has been added to the contract. And volume means contracts that people can buy, and that market makers would have to honor those contracts and sell stock, for example, if it's a call option. So knowing that volume has been added to a quote, or whether or not it's been added to a quote, is very important to a market maker. And, yes, I can see it's not precise. We can talk about lots of different examples where different volumes would result in the same risk level of 1 or 0. So it's sort of a blunt instrument, if you will, to tell the market maker that something's happening here that you should be concerned about. Volume is being added to your quote. And the market maker in advance can say, okay, as long as that doesn't happen five times, don't worry about it. You can keep going, electronic exchange. But if it happens five times, change my price to protect me. So that is what TILFERS teaches. It's precisely what Claim 1 talks about. You have a risk level. You add them up. When you get over a threshold, you change the price. That's the very basic sort of economic method that's at issue in these claims. It was exactly done in TILFERS. The argument that Dr. O'Hara admitted that there's no discussion in TILFERS of aggregate risk level is really unavailing. If you look at the question, it said, does TILFERS explicitly disclose aggregate? And Dr. O'Hara knew that the word aggregate isn't in TILFERS, so she said no. It doesn't explicitly talk about aggregate. But if you look at the entire transcript, she of course says that counting step-ups is an aggregate risk level because you're adding them up. And that's what the claim requires, that you add up the risk levels to get to some aggregate risk level. It's exactly the same as the claim, Your Honor. Okay, any more questions? No. All right, thank you. Those cases will be submitted.